[Cite as *State v. Kindle*, 2022-Ohio-2991.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                        CASE NO. 1-22-02

    v.

JEREMY A. KINDLE,                         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No.  CR2020 0144

Judgment Affirmed

Date of Decision:   August 29, 2022

APPEARANCES:

    *William T. Cramer* for Appellant

    *Jana E. Emerick* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jeremy Kindle ("Kindle"), brings this appeal from the January 3, 2022 judgment of the Allen County Common Pleas Court sentencing him to an aggregate, indefinite prison term of 94-98 years. On appeal, Kindle argues that the trial court erred by failing to merge certain convictions for purposes of sentencing, that consecutive sentences were not supported in this matter, and that the Reagan Tokes Law is unconstitutional.

*Background*

{¶2} In May of 2020, Kindle and his husband Scott Steffes had nine children living with them: three children they had adopted together, three children they were fostering, and three children who were displaced when their legal guardian suffered a residential fire. On May 20, 2020, one of the children who had been staying in the home, 12-year-old B.H., disclosed that Kindle and Steffes had been engaging in sexual conduct with children in the residence. After B.H. disclosed the sexual conduct, several other children in the residence were interviewed and they disclosed sexual conduct that had been occurring with Kindle and Steffes, in some cases, for years.[1]

---

[1] Some of the children were initially reluctant to talk to the police while others were more forthcoming. Nevertheless, one child actually had a hickey on his neck from Kindle during his initial interview with police.

{¶3} Kindle allegedly engaged in sexual conduct with six pre-teen or teenage boys and one adult who had previously been in the care of Kindle and Steffes.[2] The sexual conduct that was perpetrated allegedly occurred over 500 times between Kindle and one child. To make matters worse, Kindle and Steffes were HIV positive and they did not disclose this fact to the victims.[3]

{¶4} Kindle and Steffes bribed the children with money and gifts to engage in the sexual acts and to stay quiet about them.[4] In addition to the bribes, the children were also permitted to regularly smoke marijuana and consume alcohol.

{¶5} When confronted by the police, Steffes admitted to engaging in sexual acts with several of the children, though he denied engaging in sexual acts with the three youngest children. Steffes also stated that Kindle engaged in sexual acts far more often with the children than he did.

{¶6} When Kindle was confronted at his home by law enforcement, Kindle cut his own neck open with a small circular saw. He survived the incident and, when later interrogated, he admitted to engaging in sexual conduct with certain children.

---

[2] The sexual acts that were disclosed included Kindle and Steffes performing oral sex on the boys, having the boys perform anal sex on Kindle or Steffes, and having the boys perform sexual acts on each other at Kindle's direction. In addition, there were some allegations of digital penetration, or attempted penetration, of some children's anal cavities by Kindle or by other children at Kindle's direction. Further, there were allegations that Kindle and Steffes would engage in sexual acts with multiple children in the same room, and allegations that Kindle had engaged in sexual acts with multiple children at the same time.

[3] Kindle and Steffes indicated that they were being treated with medication that rendered the HIV essentially undetectable.

[4] One incident was described by multiple children wherein a few of the children were detained at Menards for theft and Kindle told the children he would pay the restitution so the boys would not get into trouble if one of the children engaged in sexual acts for the first time.

{¶7} On July 16, 2020, Kindle was charged in a 65-count indictment with 57 of the counts constituting sex crimes. The sex crimes alleged included rape, sexual battery, and unlawful sexual conduct with a minor. Kindle was also charged with felonious assaults against each of the alleged victims for engaging in sexual conduct with each victim after testing positive for HIV. Finally, Kindle was charged with tampering with evidence for attempting to alter, conceal, or destroy evidence such as sex toys, controlled substances, and cellular phone data.

{¶8} On November 12, 2021, Kindle entered into a written negotiated plea agreement wherein he agreed to plead guilty to 20 counts as charged in the indictment: three counts of sexual battery in violation of R.C. 2907.03(A)(5), all second degree felonies due to the victims being under the age of 13; six counts of sexual battery in violation of R.C. 2907.03(A)(5), all third degree felonies; five counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), all third degree felonies; four counts of felonious assault in violation of R.C. 2903.11(B)(3), all second degree felonies; one count of felonious assault in violation of R.C. 2903.11(B)(1), a second degree felony; and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third degree felony. The charges Kindle agreed to plead guilty to encompassed crimes against five child-victims and one adult victim. In exchange for Kindle's guilty pleas, the State agreed to dismiss

the remaining 45 charges in the indictment, including the most serious charges, which were rape.

{¶9} On January 3, 2022, the matter proceeded to sentencing. After hearing the arguments of the parties, the trial court determined that none of the counts merged for purposes of sentencing because they were either against different victims, constituted different sexual acts (oral versus anal sex), or the harm was different. The trial court then imposed prison terms on all 20 counts and determined that consecutive sentences were appropriate on all of the counts. Ultimately Kindle was ordered to serve an aggregate, indefinite prison term of a minimum of 94 years to a maximum of 98 years. It is from this judgment that Kindle appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's federal and state constitutional protections against double jeopardy were violated by multiple convictions for allied offenses of felonious assault and the underlying sex offenses.**

**Assignment of Error No. 2**
**By clear and convincing evidence, the record does not support the trial court's findings for consecutive sentences.**

**Assignment of Error No. 3**
**Indefinite prison terms imposed under the Reagan Tokes Law violate the jury trial guarantee, the doctrine of separation of powers, and due process principles under the federal and state constitutions.**

*First Assignment of Error*

{¶10} In his first assignment of error Kindle argues that the trial court erred by failing to merge his felonious assault convictions with the underlying sex offenses against each victim. More specifically, Kindle argues that he could not be convicted of felonious assault for having sex with a victim while carrying HIV and also convicted of a sex crime with the same victim because both crimes effectively occurred at the same time through the same sexual conduct.

## Standard of Review

{¶11} " 'Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo.' " *State v. Jessen*, 3d Dist. Auglaize No. 2-18-16, 2019-Ohio-907, ¶ 22, quoting *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894; *see generally State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-955.

## Relevant Authority

{¶12} Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

{¶13} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme

Court of Ohio held the following with regard to determining allied offenses:

> **1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.**
>
> **2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**
>
> **3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.**

The Supreme Court in *Ruff* explained:

> **At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

*Ruff*, 2015-Ohio-995 at ¶ 26.

Analysis

**{¶14}** Kindle was convicted of four counts of felonious assault in violation of R.C. 2903.11(B)(3), and one count of felonious assault in violation of R.C. 2903.11(B)(1). These sections of the felonious assault statute read as follows:

> **(B) No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly do any of the following:**
>
> **(1) Engage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct;**
>
> **\* \* \***
>
> **(3) Engage in sexual conduct with a person under eighteen years of age who is not the spouse of the offender.**

**{¶15}** Kindle was also convicted of numerous counts of sexual battery in violation of R.C. 2907.03(A)(5), which reads: "No person shall engage in sexual conduct with another, not the spouse of the offender, when \* \* \* [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." In addition, Kindle was convicted of numerous counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which reads: "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when

the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

**{¶16}** On appeal, Kindle contends that the felonious assaults he was convicted of against each victim should merge with the underlying sex offenses against each victim "because they involved the same sexual conduct with the same motivation of sexual gratification." (Appt.'s Br. at 7). In other words, Kindle argues that he was completing the act of both felonious assault and the sex crime at the same moment, thus there could not be separate convictions for the two crimes.

**{¶17}** However, in making his argument, Kindle does acknowledge our recent decision in *State v. Ward*, 3d Dist. Allen No. 1-20-08, 2021-Ohio-1930, where we directly rejected the same argument that Kindle is making *sub judice*.[5] In *Ward* a defendant was separately convicted of raping a child under the age of 13 and of felonious assault due to committing the rape of a child while having HIV. Just as Kindle does here, Ward argued that his convictions should merge for the purposes of sentencing because they were completed by the same act, at the same time, with the same animus. We rejected this argument, reasoning:

> **In this case, the harm that could result from sexual conduct with a minor under the age of 13 has considerable psychological and certain potential physical ramifications. However, that sexual conduct when one knows they are HIV positive implicates a new category of concerns in that it may result in an incurable disease that the victim will be forced to deal with during the victim's**

---

[5] Kindle indicates that he primarily wishes to preserve this issue for further review by the Supreme Court of Ohio.

**lifetime and could result in the victim's death. It can also necessitate that the victim be on medication for the victim's lifetime at great expense. The harm caused by the felonious assault in this case was separate and identifiable from the harm caused by the rape.**

*Ward* at ¶ 8.

{¶18} Kindle now urges us to revisit our holding in *Ward*, but we decline to do so and reaffirm that felonious assault via sexual acts with an undisclosed HIV diagnosis and a separate sexual crime do not merge for purposes of sentencing.

{¶19} Moreover, notwithstanding our holding in *Ward*, we could still readily determine that the sex acts and the felonious assaults were separate in this case because Kindle pled guilty to crimes that occurred against the victims *over a range of dates*. The allegations indicated *numerous* sex acts against each victim, thus each conviction could represent a different sexual act during the alleged timeframe. For all of these reasons, Kindle's first assignment of error is overruled.

*Second Assignment of Error*

{¶20} In his second assignment of error, Kindle argues that the record does not support the trial court's imposition of consecutive sentences.

Standard of Review

{¶21} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id*. at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

**{¶22}** Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, a trial court must find on the record that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Accord State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 205. A trial court must then also find that at least one or more of the aggravating factors in R.C. 2929.14(C)(4)(a) through (c) are present. Those factors include,

> **(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

> **(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

**(c)    The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

**{¶23}** In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37, the Supreme Court of Ohio held that a trial court must make the requisite statutory findings before imposing consecutive sentences "at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings."

Analysis

**{¶24}** At the outset, we note that Kindle effectively concedes that the trial court made the appropriate findings under R.C. 2929.14(C)(4) to impose consecutive sentences in this matter.[6] Instead of arguing that the trial court failed to make the proper findings, Kindle contends that the record did not support the trial court's findings. More specifically, Kindle contends that he accepted responsibility for his conduct and that he had a "low risk of reoffending" according to the presentence investigation. Further, he claims that he was a helpful and active member of his community, that he maintained full-time employment in a respectable profession, and that he had no prior criminal record. Thus he argues that there were substantial mitigating factors in his case.

---

[6] Even if he did not concede this issue, the proper findings were made at the sentencing hearing and in the judgment entry.

-12-

**{¶25}** Contrary to Kindle's arguments, we emphasize that it is well-settled that a trial court has no obligation to state its specific reasons to support its consecutive sentencing findings under R.C. 2929.14(C)(4). *Bonnell*, *supra*, at ¶ 37. Nevertheless, even though the trial court had no obligation to state any of its reasoning, the trial court *did* express its reasoning on the record. The trial court began by stating, "The only adjective that I can find that would describe this is an abomination." (Jan. 3, 2022, Tr.at 36). The trial court elaborated, stating, "Given the nature of the offenses, the time periods over which this went, the course of conduct, the number of victims, the number of times," consecutive sentences were appropriate in this matter. (*Id*. at 41).

**{¶26}** The trial court based its findings on the pre-sentence investigation and the police reports, which were both filed as exhibits at sentencing. The police reports were particularly powerful, detailing years of ongoing sexual abuse perpetrated by Kindle in what can accurately be described by anyone reading them as an "abomination."

**{¶27}** Under the facts and circumstances of this case we do not find that Kindle has demonstrated by clear and convincing evidence that his consecutive sentences were improper. The trial court made the appropriate findings to impose consecutive sentences under R.C. 2929.14(C)(4), the trial court supported those findings even though it did not have to do so on the record, and the trial court's

findings were supported in the record. For these reasons, Kindle's second assignment of error is overruled.

*Third Assignment of Error*

{¶28} In his third assignment of error, Kindle argues that the Reagan Tokes Law is unconstitutional because it violates the separation of powers and because it violates due process principles under the federal and state constitutions.

{¶29} We have repeatedly rejected constitutional challenges to the Reagan Tokes Law similar to Kindle's. *E.g.*, *State v. Freeman*, 3d Dist. Allen Nos. 1-21-17, 18, 2022-Ohio-1991. We decline to revisit our precedent here, therefore, Kindle's third assignment of error is overruled.

*Conclusion*

{¶30} For the foregoing reasons Kindle's assignments of error are overruled and the judgment and sentence of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and MILLER, J., concur.**

**/jlr**